James A. Manley
Ann L. Moderie
Manley Law Firm
201 Fourth Avenue East
Polson, Montana 59860
jimmanleylaw@centurytel.net
annmanleylaw@centurytel.net
Telephone: (406) 883-6285

Lawrence A. Anderson
Attorney at Law
300 4th Street North
P.O. Box 2608
Great Falls, MT 59403-2608
laalaw@me.com
Telephone: (406) 727-8466

Thomas J. Beers
Beers Law Offices
234 East Pine
P.O. Box 7968
Missoula, MT 59807-7968
blo@montana.com
Telephone: (406) 728-4888

Elizabeth A. Best, Esq.
BEST LAW OFFICES, P.C.
P.O. Box 2114
425 Third Ave. North
Great Falls, MT 59403-2114
bestlawoffices@gmail.com
Telephone: (406) 452-2933
**Attorneys for Plaintiff**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

| | |
|---|---|
| **JUDITH NEWMAN,**<br>**as Personal Representative**<br>**of the Estate of Karlye Newman,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**UNITED FIRE AND CASUALTY**<br>**COMPANY,**<br><br>**Defendant.** | Cause No. 9:13-CV-00047-DLC<br><br>**PLAINTIFF'S STATEMENT OF**<br>**UNDISPUTED FACTS** |

Plaintiff's Statement of Undisputed Facts        Page -1-

COMES NOW Plaintiff, and submits her Statement of Undisputed Facts pursuant to Local Rule 56.1(a).

1. Karlye Newman died at age 16 on October 7, 2004 in Sanders County, Montana. (United Fire and Casualty Company Answer and Demand for Jury Trial "Answer", Dkt #3, ¶3.)

2. Following Karlye's death, Plaintiff Judith Newman filed a lawsuit for wrongful death, survivorship, and other causes of action in Sanders County District Court Cause No. DV-06-164. (Answer, Dkt #3, ¶3.)

3. One of the defendants in that lawsuit was National Contract Services, LLC (hereafter "National"). (Answer, Dkt #3, ¶4.)

4. National was the insured under a United Fire and Casualty Company (UFCC) Commercial General Liability Insurance Policy, and a Commercial Umbrella Liability Policy, both with the policy no. 104-60069871. (Answer, Dkt #3, ¶4.; Commercial General Policy, Ex. A; Commercial Umbrella Policy, Ex. B.)

5. The underlying complaint alleged the following facts:
    a. National was a limited liability company organized under the laws of the State of Nevada (Third Amended Complaint, Ex. C, ¶25.)
    b. National was one company of a large web of interlocking companies run by a man named Robert Lichfield, who ran behavior modification residential programs for youth. (Ex. C, ¶¶2-38.)
    c. One of the programs was Spring Creek Lodge in Montana. (Ex. C, ¶¶2-7.)
    d. Karlye Newman resided at Spring Creek Lodge from March 31, 2004 to October 7, 2004 when she died by suicide. (Ex. C, ¶¶50-80.)
    e. National purported to provide the following services to Spring Creek

|   |   |   |
|---|---|---|
|   |   | Lodge: marketing, promotion, admissions, seminars, newsletters, support services, academic course outline, curriculum, manuals, training outlines, consulting, billing, and collections.  (Ex. C, ¶27. ) |
|   | f. | National, and the other related businesses, were formed solely for purposes of facilitating a scheme to defraud the parents who sent their children to Spring Creek Lodge and for shielding the true owner from liability.  (Ex. C, ¶35.) |
|   | g. | National was jointly liable for a wide range of negligent and intentional tortious conduct by numerous other named defendants. (Ex. C, ¶¶38, 82, 89-90.) |
|   | h. | Karlye Newman was generally neglected and abused at Spring Creek. (Ex. C, ¶¶51-80.) |
|   | i. | She became suicidal, and on October 7, 2004, Spring Creek "lost" her for a period of time and she hanged herself.  (Ex. C, ¶¶76-78.) |
|   | j. | The untrained, unqualified person who was supposed to be in charge of Karlye found her hanging, still alive, and rather than helping Karlye, ran out of the building screaming in panic.  (Ex. C, ¶¶79-80.) |
|   | k. | Many of the services National claimed to provide Spring Creek Lodge were inadequate and contributed to Karlye's suffering and eventual death, such as misleading marketing, wrongful admission to the program, poor educational services, and negligent training.  (Ex. C,¶¶42-80.) |

6. National tendered defense of the lawsuit to UFCC.  (Answer, Dkt #3, ¶6; Correspondence Ex. D.)

7. UFCC refused defense and indemnity.  (Answer, Dkt #3, ¶6, Ex. D.)

8. Because of UFCC's refusal to defend National, National was forced to pay

Plaintiff's Statement of Undisputed Facts        Page -3-

|     |     |
| --- | --- |
|     | for its own defense costs and was exposed to potential financial risk. (Answer, Dkt #3, ¶7.) |
| 9.  | Plaintiff's counsel wrote UFCC on January 19, 2010 offering to settle her claim against National for what counsel believed was the policy limit based on documents produced through discovery.  (Ex. D.) |
| 10. | Plaintiff's counsel invited UFCC to participate in a February 19, 2010 court-ordered mediation. (Ex. D.) |
| 11. | Plaintiff's counsel further notified UFCC that if it failed to appear and participate, Plaintiff may negotiate and enter into a settlement with National, resulting in a judgment that UFCC would have to pay.  (Ex. D.) |
| 12. | UFCC refused to participate. (Answer, Dkt #3, ¶8; Ex. D.) |
| 13. | At the mediation, National entered into a compromise settlement agreement with the Plaintiff.  (Answer, Dkt #3, ¶9.) |
| 14. | As part of that settlement, National agreed to entry of a judgment, and assigned to the Plaintiff all of National's first party claims it might have against UFCC.  (Answer, Dkt #3, ¶9.) |
| 15. | On March 26, 2010, the parties to Sanders County Cause No. DV-06-164 appeared before the District Court for hearing, for approval of the settlement agreement, and for entry of the agreed-upon judgment. (Answer, Dkt #3, ¶11.) |
| 16. | Plaintiff produced testimony and exhibits.  (Findings, Conclusions, and Order, Ex. E.) |
| 17. | On March 29, 2010, the District Court entered its Findings, Conclusions and Order approving the settlement, and awarded judgment against National in the amount of the settlement, $3,000,000.   (Answer, Dkt #3, ¶12; Ex. E; Partial Judgment Against National Contract Services, LLC, Ex. F.) |


9. Plaintiff's counsel wrote UFCC on January 19, 2010 offering to settle her claim against National for what counsel believed was the policy limit based on documents produced through discovery.  (Ex. D.)

10. Plaintiff's counsel invited UFCC to participate in a February 19, 2010 court-ordered mediation. (Ex. D.)

11. Plaintiff's counsel further notified UFCC that if it failed to appear and participate, Plaintiff may negotiate and enter into a settlement with National, resulting in a judgment that UFCC would have to pay.  (Ex. D.)

12. UFCC refused to participate. (Answer, Dkt #3, ¶8; Ex. D.)

13. At the mediation, National entered into a compromise settlement agreement with the Plaintiff.  (Answer, Dkt #3, ¶9.)

14. As part of that settlement, National agreed to entry of a judgment, and assigned to the Plaintiff all of National's first party claims it might have against UFCC.  (Answer, Dkt #3, ¶9.)

15. On March 26, 2010, the parties to Sanders County Cause No. DV-06-164 appeared before the District Court for hearing, for approval of the settlement agreement, and for entry of the agreed-upon judgment. (Answer, Dkt #3, ¶11.)

16. Plaintiff produced testimony and exhibits.  (Findings, Conclusions, and Order, Ex. E.)

17. On March 29, 2010, the District Court entered its Findings, Conclusions and Order approving the settlement, and awarded judgment against National in the amount of the settlement, $3,000,000.   (Answer, Dkt #3, ¶12; Ex. E; Partial Judgment Against National Contract Services, LLC, Ex. F.)

1 18. UFCC denied defense and indemnity to National on the basis of a Designated Premises Endorsement in the Commercial General Policy. (Ex. D.)

19. UFCC provided no analysis on whether there was a duty to defend under the Commercial Umbrella Policy, also policy # 6069871. (Ex. D.)

20. In denying defense to National, UFCC stated:

"The complaint clearly alleges that the deceased hung herself at a location known (sic) as Spring Creek, a boarding school not located on the above described premises. Based on the endorsement, there is no coverage for this unfortunate event because it did not occur on the above described premises." (Ex. D.)

21. The relevant coverage language of the 2004/2005 UFCC Commercial General policy states:

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

    1.    Insuring Agreement

        a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

        * * *

        b.    This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence' that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

       * * *

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

"Coverage Territory" means the United States of America (including its territories and possessions), Puerto Rico and Canada; . . .

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

(UFCC Commercial General Policy, Ex. A, Bates Stamp UF000016, 28, 29.)

22.    The Designated Premises Endorsement states:

  LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

    This endorsement modifies the insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART

                        SCHEDULE

| Premises: |
| --- |
| AS SHOWN ON DEC |
| Project: |
|  |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

    1.    The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

    2.    The project shown in the Schedule.

(Ex. A, Bates Stamp UF000004.)

23.    The Premises is listed on the Declarations as: 158 W 1600 S #15, St. George, UT 84770.  (Ex. A, Bates Stamp UF000002.)

24.    UFCC's 2004/2005 Commercial Umbrella Policy states:

    COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE

Plaintiff's Statement of Undisputed Facts        Page -6-

LIABILITY

1. Insuring Agreement

We will pay on behalf of the insured for ultimate net loss in excess of the retained limit because of bodily injury or property damage to which this insurance applies. No other obligation or liability to pay sums or performs acts or services is covered unless explicitly provided for under SECTION II - DEFENSE AND SUPPLEMENTARY PAYMENTS - COVERAGES A and B.

It is agreed that:

a. The bodily injury or property damage must occur during the policy period of this policy;

* * *

d. The bodily injury or property damage must be caused by an occurrence; and

e. The occurrence must take place in the coverage territory.

(Ex. B, Bates Stamp UF000117.)

"Bodily Injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these at any time.

"Coverage Territory" means anywhere in the world if the insured's responsibility to pay damages is determined in a suit on the merits, in the United States of America (including the territories and possessions), Puerto Rico or Canada, on in a settlement we agree to.

"Occurrence" means:

a. With respect to bodily injury or property damage, an accident, including continuous or repeated exposure to substantially the same general harmful conditions. . .

(Ex. B, Bates Stamp, UF000129,130, 131.)

25. In regards to UFCC's duty to defend, the Umbrella policy states:

SECTION II - DEFENSE AND SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

We have the right to associate with the underlying insurer and the insured to defend any claim or suit seeking damages for bodily injury, property damage, personal and advertising injury to which this insurance applies. But

1. The amount we will pay for ultimate net loss is limited as described in

Plaintiff's Statement of Undisputed Facts       Page -7-

SECTION IV - LIMIT OF INSURANCE.

2. We have a duty to defend any claims or suits not covered by any underlying insurance shown in the Declarations; we also have the duty to defend such claims or suits if the applicable limit of underlying insurance is exhausted;

* * *

(Commercial Umbrella Policy, Ex. B. Bates Stamp UF000123.)

DATED this 22nd day of April, 2013.

/s/ Ann L. Moderie
Ann L. Moderie
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that, on April 22nd, 2013, a copy of the foregoing document was served on the following persons by the following means:

  X   CM/ECF
_____ Hand Delivery
_____ Mail
_____ Overnight Delivery Service
_____ Fax
_____ Email

Stephanie A. Hollar, Esq.
Dennis P. Clarke, Esq.
Smith, Walsh, Clarke & Gregoire, PLLP
P.O. Box 2227
Great Falls, MT 59403-2227

/s/ Ann L. Moderie
Ann L. Moderie
Counsel for Plaintiff