James A. Manley
Ann L. Moderie
Manley Law Firm
201 Fourth Avenue East
Polson, Montana 59860
jimmanleylaw@centurytel.net
annmanleylaw@centurytel.net
Telephone: (406) 883-6285

Lawrence A. Anderson
Attorney at Law
300 4th Street North
P.O. Box 2608
Great Falls, MT 59403-2608
laalaw@me.com
Telephone: (406) 727-8466

Thomas J. Beers
Beers Law Offices
234 East Pine
P.O. Box 7968
Missoula, MT 59807-7968
blo@montana.com
Telephone: (406) 728-4888

Elizabeth A. Best, Esq.
BEST LAW OFFICES, P.C.
P.O. Box 2114
425 Third Ave. North
Great Falls, MT 59403-2114
bestlawoffices@gmail.com
Telephone: (406) 452-2933
**Attorneys for Plaintiff**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**MISSOULA DIVISION**

| | |
|---|---|
| **JUDITH NEWMAN,** <br> **as Personal Representative** <br> **of the Estate of Karlye Newman,** <br><br> **Plaintiff,** <br><br> vs. <br><br> **UNITED FIRE AND CASUALTY** <br> **COMPANY,** <br><br> **Defendant.** | **Cause No. 9:13-cv-00047-DLC** <br><br> **PLAINTIFF'S BRIEF IN SUPPORT OF** <br> **MOTION FOR SUMMARY** <br> **JUDGMENT** |

COMES NOW Plaintiff, and files this Brief in Support of Motion for Summary Judgment.

This brief is organized as follows:

I.      Summary

II.     Background Facts

III.    Plaintiff's Standing

IV.     Summary Judgment Test

V.      UFCC's Policy Language

        A.      Commercial General Liability Policy

        B.      Commercial Umbrella Policy

VI.     Duty to Defend Rules

VII.    Interpretation of Insurance Contracts

VIII.   Liability

        UFCC  Breached the Duty to Defend.

IX.     Damages

        For breach of duty to defend, certain damages follow as a matter of law:

                A.  Underlying Judgment

                B.  Post-Judgment Interest

                C.  Attorney's Fees and Costs

X.      Conclusion

**I.    <u>Summary</u>**

This case is straight forward.  United Fire and Casualty Company (UFCC) contracted under its Commercial General Liability Policy to defend lawsuits against National Contract Services, LLC (National) that alleged bodily injury arising out of the ownership, maintenance, or use of National's premises and operations necessary or incidental to those premises.  UFCC also contracted to

defend National under its Commercial Umbrella Policy if there was no coverage under the Commercial General Liability Policy.

UFCC refused to defend National under its Commercial General Liability Policy even though Plaintiff's lawsuit clearly alleged injury arising out of the use of, and incidental to, National's premises and operations.   UFCC failed to define the terms "arising out of" and "operations", which are reasonably susceptible to more than one meaning, and therefore, ambiguous.   Under Montana law, such ambiguity must be strictly construed against the insurer.

UFCC also refused to defend under its Commercial Umbrella Policy even though it was taking the position there was no coverage under the underlying insurance.   UFCC refused to follow the process set out by the Montana Supreme Court:

1.     defend under reservation of rights until the duty is determined; and

2.     file a declaratory judgment action.

By refusing to defend, UFCC waived its right to challenge coverage and right to challenge the settlement.   The consequences, as a matter of law, include the damages set forth below.

**II.     Background Facts**

Karlye Newman died at age 16 on October 7, 2004 in Sanders County, Montana.  *Statement of Undisputed Facts*, ¶ 1.  Following Karlye's death, Plaintiff Judith Newman filed a lawsuit for wrongful death, survivorship, and other causes of action in Sanders County District Court Cause No. DV-06-164.  *Id*. at ¶ 2 One of the defendants in that lawsuit was National Contract Services, LLC.  *Id.* at ¶ 3.  National was the insured under a United Fire and Casualty Company (UFCC) Commercial General Insurance Policy, and a Commercial Umbrella Liability Policy, both with the policy # 104-60069871.  *Id.* at ¶ 4.  National's office was

located in St. George, Utah.  *Id.* at ¶ 24.

The underlying complaint alleged the following facts:

a.    National was one company of a large web of interlocking companies run by a man named Robert Lichfield, who ran behavior modification residential programs for youth.

b.    One of the programs was Spring Creek Lodge in Montana.

c.    Karlye Newman resided at Spring Creek Lodge from March 31, 2004 to October 7, 2004 when she died by suicide.

d.    National purported to provide the following services to Spring Creek Lodge: marketing, promotion, admissions, seminars, newsletters, support services, academic course outline, curriculum, manuals, training outlines, consulting, billing, and collections.

e.    National, and the other related businesses, were formed solely for purposes of facilitating a scheme to defraud the parents who sent their children to Spring Creek Lodge and for shielding the true owner from liability.

f.    National was jointly liable for a wide range of negligent and intentional tortious conduct by numerous other named defendants.

g.    Karlye Newman was generally neglected and abused at Spring Creek.

h.    She became suicidal, and on October 7, 2004, Spring Creek "lost" her for a period of time and she hanged herself.

i.    The untrained, unqualified person who was supposed to be in charge of Karlye found her hanging, still alive, and rather than helping Karlye, ran out of the building screaming in panic.

j.    Many of the services National claimed to provide Spring Creek Lodge were inadequate and contributed to Karlye's suffering and

eventual death, such as misleading marketing, wrongful admission to the program, poor educational services, and negligent training. *Id.* at ¶ 5.

National tendered defense of the lawsuit to UFCC. *Id.* at ¶ 6. UFCC refused defense and indemnity. *Id.* at ¶ 7. Because of UFCC's refusal to defend, National was forced to pay for its own defense costs and was exposed to potential financial risk. *Id.* at ¶ 8.

Plaintiff's counsel wrote UFCC on January 19, 2010 offering to settle her claim against National for what counsel believed was the policy limit based on documents produced through discovery. *Id.* at ¶ 9. UFCC was invited to participate in a February 19, 2010 court-ordered  mediation, and was warned that if it failed to appear and participate, Plaintiff may settle with National, resulting in a judgment that UFCC would have to pay. *Id.* at ¶¶ 10,11. UFCC refused to participate. *Id.* at ¶ 12.

At the mediation, National entered into a compromise settlement agreement with the Plaintiff. *Id.* at ¶ 13. As part of that settlement, National agreed to entry of a judgment, and assigned to the Plaintiff all of National's first party claims it might have against UFCC. *Id.* at ¶ 14.

On March 26, 2010, the parties to Sanders County Cause No. DV-06-164 appeared before the District Court for hearing, for approval of the settlement agreement, and for entry of the agreed-upon judgment. *Id.* at ¶ 15. Plaintiff produced testimony and exhibits. *Id.* at ¶ 16. On March 29, 2010, the District Court entered its Findings, Conclusions, and Order approving the settlement, and awarded judgment against National in the amount of the settlement, $3,000,000. *Id.* at ¶ 17.

UFCC denied defense and indemnity to National on the basis of a

Plaintiff's Brief in Support of Motion for Summary Judgment                    5

1  Designated Premises Endorsement in the Commercial General Liability Policy.
2  *Id.* at ¶ 18.  UFCC provided no analysis on whether there was a duty to defend
3  under the Commercial Umbrella Policy.  *Id.* at ¶ 19.

4  **III.   Plaintiff's Standing**

5        Plaintiff brings this action for enforcement of Plaintiff's third party rights
6  against UFCC, and also the first party rights of National, pursuant to the
7  assignment of those rights.

8  **IV.   Summary Judgment Standard**

9        A party moving for summary judgment bears the burden of demonstrating
10 "that there is no genuine dispute as to any material fact and the movant is entitled
11 to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A movant may satisfy that
12 burden where the documentary evidence produced by the parties permits only one
13 conclusion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).  The party
14 seeking summary judgment bears the initial burden of informing the Court of the
15 basis for its motion, and identifying those portions of the pleadings, depositions,
16 answers to interrogatories, and admissions on file, together with the affidavits, if
17 any, which it believes demonstrate the absence of any genuine issue of material
18 fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

19       Where the moving party has met its initial burden with a properly supported
20 motion, the party opposing the motion "may not rest upon the mere allegations or
21 denials of his pleading, but . . . must set forth specific facts showing that there is a
22 genuine issue for trial." *Anderson*, 477 U.S. at 248.   And where the nonmoving
23 party bears the burden of proof at trial, the moving party may satisfy its initial
24 burden on summary judgment by showing that there is an absence of evidence in
25 the record to support the nonmoving party's claims. *Celotex*, 47 U.S. at 325.

26       Once the moving party has satisfied its initial burden with a properly

27

28  Plaintiff's Brief in Support of Motion for Summary Judgment                    6

supported motion, summary judgment is appropriate unless the non-moving party designates by affidavits, depositions, answers to interrogatories of admissions on file, "specific facts showing that there is a genuine issue for trial." *Id.* at 324. The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleadings...." *Anderson*, 477 U.S. at 248.

## V.   UFCC's Policy Language

### A.   Commercial General Liability Policy

The relevant coverage language of the UFCC Commercial General Liability Policy states:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.   Insuring Agreement**

> **a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.**
>
> **\* \* \***
>
> **b.   This insurance applies to "bodily injury" and "property damage" only if:**
>
> **(1) The "bodily injury" or "property damage" is caused by an "occurrence' that takes place in the "coverage territory";**
> **(2) The "bodily injury" or "property damage" occurs during the policy period; and**
>
> **\* \* \***

**"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.**

**"Coverage Territory" means the United States of America (including its territories and possessions), Puerto Rico and Canada; . . .**

**"Occurrence" means an accident, including continuous or repeated exposure**

**to substantially the same general harmful conditions.**

*Statement of Undisputed Facts*, ¶ 21.

     In denying defense to National, UFCC stated:

     "The complaint clearly alleges that the deceased hung herself at a location known (sic) as Spring Creek, a boarding school not located on the above described premises.  Based on the endorsement, there is no coverage for this unfortunate event because it did not occur on the above described premises."

*Id.* at ¶ 20.

     The Commercial General Liability Policy's Designated Premises Endorsement states:

## LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

**This endorsement modifies the insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SCHEDULE**

| |
|---|
| **Premises:** <br><br> **AS SHOWN ON DEC** |
| **Project:** <br><br><br> |

**(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to his endorsement.)**

**This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:**

    **1.**    **The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or**

    **2.**    **The project shown in the Schedule.**

*Id.* at ¶ 22.  The Premises is listed on the Declarations as: "158 W 1600 S #15, St. George, UT 84770".  *Id.* at ¶ 23.

**B.     Commercial Umbrella Policy**

UFCC's Commercial Umbrella Policy states:

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

**We will pay on behalf of the insured for ultimate net loss in excess of the retained limit because of bodily injury or property damage to which this insurance applies.  No other obligation or liability to pay sums or performs acts or services is covered unless explicitly provided for under SECTION II - DEFENSE AND SUPPLEMENTARY PAYMENTS - COVERAGES A and B.**

**It is agreed that:**

**a.     The bodily injury or property damage must occur during the policy period of this policy;**

**\*   \*   \***

**d.     The bodily injury or property damage must be caused by an occurrence; and**

**e.     The occurrence must take place in the coverage territory.**

**"Bodily Injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these at any time.**

**"Coverage Territory" means anywhere in the world if the insured's responsibility to pay damages is determined in a suit on the merits, in the United States of America (including the territories and possessions), Puerto Rico or Canada, on in a settlement we agree to.**

**"Occurrence" means:**

**a.     With respect to bodily injury or property damage, an accident, including continuous or repeated exposure to substantially the same general harmful conditions. . .**

**SECTION II - DEFENSE AND SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

**We have the right to associate with the underlying insurer and the insured to defend any claim or suit seeking damages for bodily injury, property damage, personal and advertising injury to which this insurance applies.  But**

**1.     The amount we will pay for ultimate net loss is limited as described in SECTION IV - LIMIT OF INSURANCE.**

1    **2.    We have a duty to defend any claims or suits not covered by any**
2    **underlying insurance shown in the Declarations; we also have the**
     **duty to defend such claims or suits if the applicable limit of**
3    **underlying insurance is exhausted;**

          *   *   *
4    *Id.* at ¶¶ 24, 25.

5    ## VI.   Duty to Defend Rules

6          An insurer has a duty to defend its insured from a risk covered by the terms

7    of an insurance policy. *Farmers Union Mut. Ins. Co. v. Staples,* 90 P.3d 381, ¶20

8    (Mont. 2004).  The duty to defend is distinct from, and much broader than, the

9    duty to indemnify. *Grindheim v. Safeco Ins. Co. of America*, 908 F.Supp. 794,800

10   (D.Mont. 1995)(citing *St. Paul Fire & Marine Inc. Co. v. Thompson,* 433 P.2d

11   795, 799 (Mont. 1967)).  The duty is triggered merely when facts are presented, or

12   when a complaint filed against an insured alleges facts, which, if proven, would

13   bring an event within the insurance policy's coverage. *Staples* at ¶20.

14   Furthermore, the obligation exists even if facts alleged in the complaint present a

15   claim for a risk not covered by the policy, if the complaint also alleges facts

16   which, if proven, would present a risk covered by the policy. *Staples* at ¶21.

17         In light of the broad duty, an insurer is prohibited from developing facts to

18   establish the non-existence of coverage.  It is, after all, the allegations in the

19   complaint against the insured which trigger the duty to defend.  If the facts of the

20   event as pled in the complaint would expose the insured to liability covered by the

21   policy, then the insurer must defend the insured, even if the subsequent ultimate

22   resolution of disputed facts establishes that the event or risk is not covered by the

23   policy. *Staples* at ¶23.

24         The duty to defend is triggered when the insured's liability is even

25   "potentially" within the policy's coverage. *Grindheim* at 798, 802.  "Unless there

26   exists an unequivocal demonstration that the claim against an insured does not fall

27

28

within the insurance policy's coverage, an insurer has a duty to defend." *Staples* at ¶22.  Further, if there is any dispute as to facts relevant to coverage, such factual disputes must be resolved in favor of finding duty to defend.  *Staples* at ¶24.

If an insurer believes there is a legitimate basis for contesting coverage, the proper procedure is to defend the insured under a reservation of rights, and file a declaratory judgment action to resolve the coverage issue.  *Staples* at ¶26, 28.  An insurer cannot unilaterally resolve coverage issues in its favor in lieu of a declaratory judgment when there are disputed facts relative to the existence of coverage.  *Staples* at ¶26.

As Federal Magistrate Erickson said in his Findings and Recommendations in *Nielsen v. TIG Ins. Co.*, United States District Court of Montana, CV 05-47 (2006)(attached as Ex. G to Plaintiff's Statement of Undisputed Facts for Court's convenience)**:**

> I remain amazed at the number of cases that have come before this court and the state courts in Montana over the years where presumably sophisticated insurance companies have ignored this maxim of insurance law at their peril.  To save the relatively minor costs of tendering a defense and commencing a dec. action, these companies have exposed themselves to risk far in excess of the policy limits at issue.  The reasoning behind this is difficult to fathom.

(Page 8, footnote 1.)  Magistrate Erickson's findings were adopted in full by Judge Molloy in *Nielsen v. TIG Ins. Co.,* 442 F. Supp. 2d 972 (D.Mont. 2006).

In fact, in Montana the insurer does not even risk the "relatively minor costs of tendering a defense and commencing a dec. action" that Magistrate Erickson spoke of in *Nielsen*.  If the insurer defends under a reservation of rights, and properly files a declaratory judgment action and prevails, the insurer can recover its defense costs from the insured.  *Travelers Casualty and Surety Co. v. Ribi Immunichem,* 108 P.3d 469, ¶50 (Mont. 2005).

1

**VII.   Interpretation of Insurance Contracts**

2

3

Unlike most contracts, insurance policy terms are not the result of

4

negotiation or bargaining.  Insurance policies occupy the same status as "take-it-

5

or-leave-it" adhesion contracts.  *McAlear v. St. Paul Insurance Companies*, 493

6

P.2d 331, 335 (Mont. 1972); *Modroo v. Nationwide Mutual Fire Ins. Co. et al.*,

7

191 P.3d 389, ¶ 61 (Mont. 2008.).  The insurance company dictates the terms and

writes the contract.

8

At the same time, insurance contracts are unique in that, when the consumer

9

pays the premium, the consumer gets nothing in return but a promise of security in

10

the future.  Insurance has huge importance for society, and especially for the

11

individual policy holder.  A loss of coverage will often mean financial disaster to

12

the policy holder.

13

For these reasons, courts universally apply interpretation rules to protect the

14

fair expectations and interests of the insured, who did not write the contract.

15

**A.      Ambiguous provisions must be interpreted favorably to the**

16

**insured**.

17

Under Montana law, the court initially determines whether any policy

18

provision at issue is ambiguous.  Policy provisions are interpreted "according to

19

their usual, common sense meaning as viewed from the perspective of a

20

reasonable consumer of insurance products."  *Stutzman v. Safeco Ins. Co. of Am.*,

21

945 P.2d 32, 34 (Mont. 1997).  The court must consider the policy provisions from

22

the viewpoint of a consumer of average intelligence.  *Stutzman*, 945 P.2d at 36,

23

citing *Leibrand v. Nat'l Farmer Union*, 898 P.2d 1220, 1224 (Mont. 1995).  Any

24

ambiguity will be strictly construed against the insurer.  *Wendell v. St. Farm Mut.*

25

*Auto. Ins. Co.,* 974 P.2d 623, 628 (Mont. 1999).

26

27

28

1

**B.    Exclusion terms must be narrowly and strictly interpreted.**

2     Coverage terms are broadly interpreted to find coverage.  When interpreting
3  exclusions in a policy, the court applies a stricter standard.  The "protective
4  purpose of an insurance policy and the obligation of the insurer to provide a
5  defense require that coverage exclusions be narrowly construed."  *Staples* at ¶22.
6  When words constitute an exclusion that, if applicable, would defeat coverage,
7  they "must be strictly construed against the insurer regardless of whether they are
8  ambiguous."  *Leibrand* at 7; *Moore v. Safeco Ins. Co*, 954 F. Supp. 209, 212 (D.
9  Mont. 1997).  In interpreting exclusion provisions, the threshold inquiry of
10  ambiguity is whether "the contract taken as a whole in its wording or phraseology
11  is reasonably subject to two different interpretations." *Moore,* 954 F. Supp. at 212.
12  This is not necessarily the end of the inquiry.

13  **VIII.  Liability: UFCC Breached the Duty to Defend**.

14     UFCC clearly had the duty to defend National under its Commercial
15  General Liability Policy.  The language of the Designated Premises Exclusion is,
16  at best, ambiguous, and therefore must be construed in favor of coverage, and
17  Plaintiff.  UFCC's denial fails because it relied on undefined and ambiguous
18  exclusion terms, including the terms "arising out of" and *"operations".*  Also,
19  UFCC failed to provide any coverage analysis whatsoever for the Commercial
20  Umbrella Policy.

21     Montana courts have held the term *"arising out of"* ambiguous on many
22  occasions.  *Pablo* at ¶16, followed in *Troutt v. Colorado Western Ins. Co.*, 246
23  F.3d 1150 (9th Cir. 2001): "Therefore, under Montana law, because the term
24  "arising out of" is inherently ambiguous in the insurance context, it has to be
25  construed against the insurer and in favor of the insured." *Troutt*, 246 F.3d at
26  1160 (*emphasis added.*); *Hudson v. Edsall*, 29 M.F.R. 100 (D. Mont 2001),
27  adopted in 30 M.F.R. 462 (D. Mont. 2002) in which the Court held that "*arising*

28

1  *out of the operations"* was ambiguous; see also *Fire Insurance Exchange v. Tibi,*
2  51 F.Supp.2d 1065, 1072-73 (D.Mont. 1995).

3    It is certainly arguable that Karlye's injuries arose out of the operations
4  incidental to National's premises.  There is no question the underlying complaint
5  alleged Karlye Newman suffered "bodily injury" and such injuries were caused, at
6  least in part,  by National's negligent conduct.   Plaintiff alleged that improper
7  marketing, wrongful admission of Karlye to Spring Creek Lodge, inadequate
8  educational services, and improper training contributed to her physical suffering
9  and eventual death.  Those services were part of National's "operations" in Utah.

10    Plaintiff's interpretation appears to be the *only* interpretation that makes
11  sense.  At page UF000028 of the policy, it says "*Coverage territory"* includes:
12  "The United States of America (including its territories and possessions, Puerto
13  Rico and Canada. . .)".   If coverage were limited to injuries at the National office,
14  the description of the broader "*coverage territory"* would make no sense.

15    Montana follows the rule that policy terms must be interpreted, if possible,
16  so that the various terms in the policy are consistent and harmonious, not
17  inconsistent and mutually exclusive, and the Court will not adopt an interpretation
18  which would render the expected coverage illusory, as that would be an
19  unconstitutional denial of substantive due process.  *Hardy v. Progressive Specialty*
20  *Ins. Co.,* 67 P.3d 892, ¶14-27 (Mont. 2003).

21    Also, once National took the position there was no coverage under its
22  Commercial General Liability Policy, it had a duty to defend under its Commercial
23  Umbrella Policy.  The underlying complaint alleged bodily injury caused by an
24  occurrence that took place in the coverage territory, as defined in the Commercial
25  Umbrella Policy.

26
27
28  Plaintiff's Brief in Support of Motion for Summary Judgment      14

**IX.   Damages**

   **A.   Underlying Judgment**

The law is clear that where an insurer wrongly refuses to defend and indemnify, and the insured thereafter enters into a settlement, the insurer is obligated for the entire judgment below.  *Staples* at ¶28-34.  UFCC is bound by the District Court's judgment.

   **B.   Post-Judgment Interest**

Interest on the judgment is required by §25-9-205 and §27-1-211 Mont. Code Ann.

   **C.   Attorney's Fees and Costs**

Plaintiff brings this action in its own behalf, and also as assignee of National.  Plaintiff had to bring this action to prove coverage and for indemnification.  The Montana Supreme Court has held that the Plaintiff must be awarded the reasonable attorney's fees and costs incurred herein.  *Mountain West Bureau Mut. Ins. Co*. *v. Brewer,* 69 P.3d 652, ¶36 (Mont. 2003).

Plaintiff is filing a separate Motion for Attorney's Fees and Costs pursuant to Rule 54(d)(2) F.R.Civ.P.

**X.   Conclusion**

Plaintiff is entitled to summary judgment.  There is no genuine dispute as to any material fact.  Plaintiff is entitled to judgment as a matter of law because there clearly was a possibility of coverage under UFCC's policy.  UFCC decided to roll the dice, gambling not only its interests, but also the interests of its insured, by using only the interpretation that favored UFCC and ignoring other possible interpretations.  The consequence of the breach of duty to defend is that UFCC is estopped from denying coverage, and is now liable for the entire judgment. Plaintiff requests the Court issue summary judgment and declaratory judgment that Plaintiff is entitled to:

1.    judgment to pay the underlying judgment;

2.    interest on the underlying judgment, and this judgment, at the statutory rate (10%); and

3.    attorney's fees and costs (amount to be determined by separate motion).

DATED this 22nd day of April, 2013.

/s/ Ann L. Moderie
Ann L. Moderie
Counsel for Plaintiff

## CERTIFICATE OF COMPLIANCE

The undersigned does hereby certify that pursuant to Local Rule 7.1(d)(2), the Plaintiff's Brief in Support of Motion for Summary Judgment:

•    does not exceed 6500 words (briefs in support of motion and response briefs) or 3250 words (reply briefs); and
•    the brief contains 3824, excluding caption, certificate of service, and certificate of compliance.

DATED this 22nd day of April, 2013.

/s/ Ann L. Moderie
Ann L. Moderie
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that, on April 22nd, 2013, a copy of the foregoing document was served on the following persons by the following means:

  X    CM/ECF
_____  Hand Delivery
_____  Mail
_____  Overnight Delivery Service
_____  Fax
_____  Email

Stephanie A. Hollar, Esq.
Dennis P. Clarke, Esq.
Smith, Walsh, Clarke & Gregoire, PLLP
P.O. Box 2227
Great Falls, MT 59403-2227

/s/ Ann L. Moderie
Ann L. Moderie
Counsel for Plaintiff