IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JUDITH NEWMAN, as Personal Representative of the Estate of Karlye Newman, | CV 13–47–M–DLC |
| Plaintiff, | ORDER |
| vs. | **FILED** |
| UNITED FIRE AND CASUALTY COMPANY, | JAN 1 5 2014 |
| Defendant. | Clerk, U.S. District Court District Of Montana Missoula |

Before the Court are the parties cross-motions for summary judgment.

Jurisdiction is based on diversity.  For the reasons explained, the Court will grant

Plaintiff's motion for summary judgment and deny Defendant's motion.

### FACTUAL AND PROCEDURAL BACKGROUND

### I.   Introduction

This case arises out of the suicide of Karlye Newman, age 16, on October 4,

2004 at Spring Creek Lodge in Sanders County, Montana.  Spring Creek Lodge

was a behavior modification residential program for youth where Karlye resided as

a student.

Following Karlye's death, Judith Newman as personal representative for

Karlye ("Newman"), filed suit against multiple defendants, including National

Contract Services, LLC ("National"), for wrongful death and survivorship among

other claims in Sanders County District Court.  According to the Complaint,

National was one company of a large web of interlocking companies run by a man

named Robert Lichfield, who ran behavior modification residential programs for

youth.  The Complaint alleged that National purported to provide various services

to Spring Creek Lodge, including marketing, promotion, admissions, support

services, academic course routine, curriculum, manuals, and training outlines.

According to the Complaint, many of the services National claimed to provide

Spring Creek Lodge were inadequate and contributed to Karlye's suffering and

eventual death, including misleading marketing, wrongful admission to the

program, poor educational services, and negligent training.

National was an insured under two policies issued by Defendant United

Fire and Casualty Company ("United"): a Commercial General Insurance Policy

and a Commercial Umbrella Policy.  National tendered defense of the suit to

United.  United declined to defend, asserting that under the Designated Premises

Endorsement in the Commercial General Liability Policy there was no coverage

and no duty to defend.  United did not provide any analysis concerning its duty to

defend under the Commercial Umbrella Policy.

United subsequently declined to attend a mediation where National settled
with Newman.  The settlement awarded judgment against National for the policy
limits under the two policies, $3,000,000, and assigned all of National's first party
claims it might have against United to Newman.

Newman, in her capacity as third party beneficiary under the policies, and as
a first party insured under the assignments, then filed this action against United for
breach of contract for its refusal to defend and for declaratory judgment.

## II.   The policies

The Commercial General Liability Policy provided that United would have
the "duty to defend the insured against any 'suit' seeking" damages for "bodily
injury" or "property damages." (Doc. 11-1 at 4.)  It further provided that "we will
have no duty to defend the insured against any 'suit' seeking damages for 'bodily
injury' or 'property damage' to which this insurance does not apply." *Id.*  The
Commercial General Liability Policy's endorsement, which United relied on in
denying a defense, limits coverage as follows: "This insurance applies only to
'bodily injury' , 'property damage', 'personal and advertising injury' and medical
expenses arising out of [] the ownership, maintenance or use of the premises
shown in the Schedule and operations necessary or incidental to those premises; or
the project shown in the Schedule." (Doc. 11-1 at 3.)  The premises listed on the

declarations schedule was "158 W 1600 S #15, St. George, UT 84770."  (Doc. 11-2 at 20.)

The Commercial Umbrella policy provided: "We have a duty to defend any claims or suits not covered by any underlying insurance shown in the Declarations; we also have the duty to defend such claims or suits if the applicable limit of underlying insurance is exhausted."  *Id.* at 9.  The Commercial Umbrella policy contained the same endorsement limiting coverage to "'bodily injury' , 'property damage', 'personal and advertising injury' and medical expenses arising out of [] the ownership, maintenance or use of the premises [at 158 W 1600 S #15, St. George, UT 84770] and operations necessary or incidental to those premises." *Id.* at 20.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ. P. 56(a).  The movant bears the initial burden of informing the Court of the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986) (internal quotation marks omitted).  The movant's burden is satisfied when the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  Where the moving party has met its initial burden, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (internal quotation marks omitted).

## CHOICE OF LAW

The parties disagree as to which state's substantive law applies to this claim. Accordingly, as a threshold matter, the Court must decide the choice of law issue.

A federal court sitting in diversity applies the substantive law of the forum state to state law claims, *Mason and Dixon Intermodal, Inc. v. Lapmaster Intern. LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011), including the choice-of-law rules of the forum state. *Johnson v. Wells Fargo Home Mortg. Inc.*, 635 F.3d 401, 420 n. 16 (9th Cir. 2011).  Here, the Court applies the choice-of-law rules of Montana.

United contends that under *Tucker v. Farmers Insurance Exchange*, 215 P.3d 1, 7-8 (Mont. 2009), Utah law applies to this case for purposes of determining liability on Plaintiff's claim for breach of the duty to defend. Newman counters that there is no conflict of law issue in this case because the

applicable general principles of insurance law are the same in Montana as in Utah.
Accordingly, Newman contends the Court should apply the law of the forum state.
*See Modroo v. Nationwide Mutual Fire Insurance Company*, 191 P.3d 389, 395
(Mont. 2008).

"In any conflict-of-laws case, the court's first task is to determine if an
actual conflict exists, and if the laws and interests of the concerned states are not
in conflict, the result is deemed a 'false conflict' or no conflict at all." 15A
Corpus Juris Secundum "Conflict of Laws" § 31. "If the laws of both states
relevant to the set of facts are the same, or would produce the same decision in the
lawsuit, there is no real conflict between them." *Phillips Petroleum Co. v. Shutts*,
472 U.S. 797, 839 n.20 (1985) (quoting R. Leflar, American Conflicts Law § 93,
p.188 (3d ed. 1977). A false conflict exists where application of either state's law
"are substantially the same and would produce the same results." *In re
Guardianship of Mowrer*, 979 P.2d 156, 161 (Mont. 1999); *see also Modroo*, 191
P.3d at 395. An actual conflict of law exists only "if the choice of one forum's
law over the other will determine the outcome of the case." 15A Corpus Juris
Secundum "Conflict of Laws" § 30 (citing *Townsend v. Sears, Roebuck and Co.*,
879 N.E.2d 893 (2007)). When there is no actual conflict, "no further analysis is
necessary, and the law of the forum state applies." *Id.*; *Modroo*, 191 P.3d at 395.

Here, United's sole basis for asserting that there is a conflict of law (and thus a choice of law issue) relates to the phrase "arising out of", which appears in the endorsement in both the Commercial General Liability Policy and the Commercial Umbrella Policy.  While Newman contends that the phrase "arising out of", absent a policy definition, is inherently ambiguous in an insurance contract under Montana law, *See Pablo v. Moore*, 995 P.2d 460, 461-462 (Mont. 2000), United contends that the phrase "arising out of" is unambiguous in the insurance context under Utah law.  *See National Farmers Union Prop. & Cas. Co. v. W. Cas. & Sur. Co.*, 577 P.2d 961, 963 (Utah 1978).

United contends that under Utah law the phrase "arising out of" has an unambiguous meaning.  The problem is that even under United's preferred Utah version of the phrase, "arising out of" has a "very broad, general and comprehensive" meaning, *id.* 577 P.2d at 963, and is "a phrase of much broader significance than 'caused by' and is ordinarily understood to mean 'incident to, or having connection with.'" *Id.* (quoting *Jackson v. Lajuanie*, 270 So.2d 859 (La. 1972).  As interpreted in Utah, the words "arising out of" "are very broad, general and comprehensive," are "commonly understood to mean originating from, growing out of, or flowing from," and it is sufficient to show that something arises out of something else if one thing is in any way "linked to" another.  *Id.*

-7-

The Court is thus left to resolve the question of whether, in the context of an exclusion under the Commercial General Liability policy (which exclusion must, according to both Utah and Montana law, be strictly construed and in favor of the insured, *Farmers Union Mut. Ins. Co. v. Staples*, 90 P.3d 381, 385 (Mont. 2004); *LDS Hosp., a Div. of Intermountain Health Care, Inc. v. Capital Life Ins. Co.*, 765 P.2d 857, 859 (Utah 1988)), the phrase "arising out of," whether deemed ambiguous and construed against the insurer, as under Montana law, or whether deemed unambiguous and given a "very broad, general and comprehensive" meaning as under Utah law, creates an actual conflict of law. United raises no other potential conflicts between Montana and Utah insurance law.

The Court concludes that under either interpretation of the phrase "arising out of", the result in this case is the same. Whether, when strictly construing the phrase against the insurer, the Court deems the phrase ambiguous, or whether it gives to it a "very broad, general and comprehensive" meaning "of much broader significance than 'caused by'", *National Farmers Union*, 577 P.2d at 963, the outcome of this case is the same. Accordingly, there is no actual conflict of law in this case, but only a false conflict, and the Court will therefore apply Montana law. *See Modroo*, 191 P.3d at 395.

APPLICABLE LAW

## I.      The duty to defend

"The duty to defend is independent from and broader than the duty to

indemnify created by the same contract." *Staples*, 90 P.3d at 385 (citing *St. Paul*

*Fire & Marine Ins. Co. v. Thompson*, 433 P.2d 795, 599 (Mont. 1967); *Grindheim*

*v. Safeco Ins. Co.*, 908 F.Supp. 794, 800 (D. Mont. 1995). "The duty to defend

arises when a complaint against an insured alleges facts, which if proven, would

result in coverage." *Id.*  "Where a complaint alleges facts which represent a risk

outside the coverage of the policy but also avers facts which, if proved, represent a

risk covered, the insurer is under a duty to defend." *Id.* (quoting *Atcheson v.*

*Safeco Ins. Co.*, 527 P.2d 549, 552 (Mont. 1974)).[1]

"When a court compares allegations of liability advanced in a complaint

with policy language to determine whether the insurer's obligation to defend was

'triggered,' a court must liberally construe allegations in a complaint so that all

doubts about the meaning of the allegations are resolved in favor of finding that

the obligation to defend was activated." *Id.* (citing *Portal Pipe v. Stonewall*, 845

---

[1] These near-universal principles of insurance law apply in Utah as well. *See Fire Ins.
Exchange v. Estate of Therkelsen*, 27 P.3d 555 (Utah 2001).  To the extent that Utah allows the
insurer to investigate extrinsic facts in determining whether the insurer had a duty to defend, *see
Estate of Therkelsen*, 27 P.3d at 651, United has not raised the issue. (See Doc. 15 at 6-7.)
Accordingly, the Court concludes that any potential conflict of law relative to this issue is
inapplicable and not at issue.

-9-

P.2d 746, 749 (Mont. 1993); *Grindheim*, 908 F.Supp at 805). "Unless there exists an unequivocal demonstration that the claim against an insured does not fall within the insurance policy's coverage, an insurer has a duty to defend." *Id.* (citing *Insured Titles, Inc. v. McDonald*, 911 P.2d 209, 212 (Mont. 1996). "[I]f there is any dispute as to the facts relevant to coverage, those factual disputes must be resolved in favor of coverage." *Id.* (citing *Insured Titles, Inc.*, 911 P.2d at 212).

When an insurer, instead of tendering a defense under a reservation of rights, unilaterally decides coverage issues in its own favor and refuses to defend, "the insurer proceeds at its own risk." *Id.*, 90 P.3d at 386. When an insurer unjustifiably breaches its duty to defend, the insurer becomes liable for defense costs and judgments. *Id.* (citing *Lee v. USAA Cas. Ins. Co.*, 86 P.3d 562, 565 (Mont. 2004)).[2]

## II.    Interpretation of Insurance Contracts

In Montana, the interpretation of an insurance contract is a question of law. *Marie Deonier & Assoc. v. Paul Revere Life Ins. Co.*, 9 P.3d 622, 630 (Mont. 2000). In most instances, insurance policies occupy the same status as contracts of adhesion. *Modroo*, 191 P.3d at 279. The language of an insurance policy governs if it is clear and explicit. *Marie Deonier & Assoc.*, 9 P.3d at 630. "The

---

[2] The same is true in Utah. *Speros v. Fricke*, 98 P.3d 28, 39 (Utah 2004).

fundamental protective purpose of an insurance policy and the obligation of the

insurer to provide a defense require that coverage exclusions be narrowly

construed." *Id.* (citing *Farmers Union Mut. Ins. Co. v. Oakland*, 825 P.2d 554,

556 (Mont. 1992). "[E]xclusions and words of limitation in a policy must be

strictly construed against the insurer regardless of whether or not they are

ambiguous." *Leibrand v. National Farmers Union Property and Cas. Co.*, 898

P.2d 1220, 1224 (Mont. 1995) (citing *Aetna Ins. Co. v. Cameron*, 633 P.2d 1212,

1214 (Mont. 1981).[3]

## ANALYSIS

### I.     Liability

United based its decision to decline to defend or indemnify National on one

ground only: the Endorsement in the Commercial General Liability Policy which

limited coverage "to bodily injury property damage, and advertising injury arising

out of the ownership, maintenance or use of the premises [at 158 W 1600 S #15,

St. George, UT 84770] and operations necessary or incidental to those premises."

---

[3] As already noted, to the extent this canon of interpretation is relevant to determining whether or not an actual conflict exists such that the Court must engage in a choice of law analysis, Utah law is consistent with Montana law. Utah law holds that "exclusion clauses are strictly construed against the insurer" and that "any doubts, ambiguities and uncertainties arising out of the language used in the policy must be resolved in [the insured's] favor." *LDS Hosp.*, 765 P.2d at 859; *see also West American Ins. Co. v. AV&S*, 145 F.3d 1224, 1229 (10th Cir. 1998) ("Utah law requires that exclusions in an insurance policy must be strictly construed against the insurer") (citing *Taylor v. American Fire & Cas. Co.*, 925 P.2d 1279, 1282 (Utah Ct.App. 1996)).

(Doc. 11-8).  In its letter declining a defense, United provided no analysis as to why National was not entitled to a defense under the Commercial Umbrella Policy. Just as in its letter declining to defend, United continues to predicate its defense here on the strength of the Endorsement.

United contends that the Endorsement, labeled "Limitation of Coverage to Designated Premises" is not an exclusion, but instead "pertains to coverage." (Doc. 10 at 14.)  United provides no citation for this assertion, and the Court rejects it.  The Endorsement clearly serves to limit coverage, and as such constitutes an exclusion that must be strictly construed against the insurer. *Leibrand*, 898 P.2d at 1224.

The question for the Court to decide is whether United has unequivocally demonstrated that the claim against National did not fall within the insurance policy's coverage, when liberally construing the allegations in the complaint so that all doubts about the meaning of the allegations are resolved in favor of finding that the obligation to defend was activated, *Staples*, 90 P.3d at 385, and when strictly construing all exclusions and words of limitation in the policy against the insurer regardless of whether or not they are ambiguous.  *Leibrand*, 898 P.2d at 1224.  The Court concludes that United has failed to show that it did not have a duty to defend and that it breached its duty to defend as a matter of law.

-12-

The Complaint alleged that National provided a variety of services to Spring Creek Lodge, including marketing, educational services, employee training, and admission services.  The Complaint further alleged that National was negligent in providing these services, that the services were inadequate, and that National's negligent and willful acts contributed to Karlye Newman's suffering and death. The Complaint sought damages for National's alleged tortious actions.

The Complaint thus drew a causal connection between the services National provided to Spring Creek Lodge and the damages suffered by Karlye Newman. Even under United's favored interpretation of the phrase "arising out of" the Complaint clearly alleged that the injuries Karlye Newman suffered were causally related to National's "ownership, maintenance or use" of the St. George, Utah premises or "any operations necessary or incidental to" its use of the premises. For instance, National's admission and promotional services provided at the St. George, Utah premises conceivably resulted in Karlye's admission into Spring Creek Lodge.  Likewise, National's negligent training provided at the St. George, Utah premises conceivably, and indeed, allegedly, led to Karlye's suffering and her ultimate death.  Any factual disputes regarding what services National actually provided to Spring Creek Lodge are immaterial at this point, and at any rate, must be resolved in favor of coverage. *Staples*, 90 P.3d at 385.

-13-

United's contention that the policy clearly limited coverage and the duty to defend to incidents that occurred directly on the St. George, Utah premises is meritless.  First, United fails to overcome all of the canons of construction that weigh heavily against it in the context of this duty to defend case.  Second, simply applying the plain language of the insurance contract, the Endorsement fails to limit coverage only to incidents occurring directly on the premises.  The Endorsement provides that the insurance "applies only to bodily injury, property damage, and personal and advertising injury *arising out of* the ownership, maintenance or *use* of the premises . . . and *any operations necessary or incidental to those premises.*"  (Doc. 11-2 at 20.) (emphasis added).  Even under United's preferred formulation, the phrase "arising out of" has a "very broad, general, and comprehensive" meaning.  *National Farmers Union*, 577 P.2d at 963.  If, as alleged in the Complaint, National, from its premises in St. George, Utah, provided training, promotional, and admission services to Spring Creek Lodge, and these services were, as alleged, causally related to Karlye's suffering and death, then Karlye's suffering and death arose out of and are "linked to" National's use of the St. George, Utah premises.  *Id.*  Furthermore, if, as alleged in the Complaint, National and Spring Creek Lodge were acting in concert for the purpose of facilitating a scheme to defraud parents who engaged their services

-14-

(Doc. 11-7 at 14), and the two entities "operated, in effect, as a single business enterprise," *id.* at 4, then the allegedly tortious operations at Spring Creek Lodge were at least "incidental to" the operations at National's premises in St. George, Utah.

It is clear that United's duty to defend under the Commercial General Liability Policy was triggered when the Complaint alleged facts which if proven, would result in coverage. *Staples*, 90 P.3d at 385. Accordingly, when United refused to provide a defense, it breached its duty to defend and is now responsible for all defense costs and judgments. *Id.*, 90 P.3d at 386.

Having found that United breached its duty to defend under the Commercial General Liability Policy, the Court need not address whether United breached its duty to defend under the Commercial Umbrella Liability Policy. The Court notes, however, that United's arguments with respect to the Umbrella Policy are merely the same as those set forth with respect to the General Liability Policy. The Court also notes that United fails to adequately addresses how its duty to defend was not triggered when the umbrella policy clearly provides that it had "a duty to defend any claims or suits not covered by any underlying insurance . . ." (Doc. 11-2 at 9.)

## II.    Damages

Having found that United breached its duty to defend the Court must determine the damages that flow from this breach.  Under both Utah and Montana law, the consequence of an insurer's failure to defend are the same: the insurer is responsible for any judgments entered below.  *Speros*, 98 P.3d at 39; *Staples*, 90 P.3d at 386.  Accordingly, Newman is entitled to entry of judgment in the amount of the judgment entered by the Sanders County District Court, $3,000,000.

Newman also seeks post-judgment interest pursuant to Montana Code Annotated § 25-9-205 and § 27-1-211.  Judgment shall be entered accordingly.[4]

Newman may file her motion for attorney's fees and costs pursuant to Rule 54(d)(2) of the Federal Rules of Civil Procedure.

IT IS ORDERED that Plaintiff's motion for summary judgment (Doc. 6) is GRANTED.

IT IS FURTHER ORDERED that judgment shall be entered in favor of the Plaintiff in the amount of $3,000,000.00.

IT IS FURTHER ORDERED that Plaintiff is entitled to any applicable post-

---

[4] Though not raised by the parties, the Court again concludes that there is no actual conflict of law with respect to this issue, even though the rate of post-judgment interest in Utah is different than the rate in Montana.  *Compare* Utah Code Ann. § 15-1-4(3)(a) *with* Mont. Code Ann. § 25-9-205.  Utah does not have a materially greater interest than Montana in seeing its post-judgment interest rate applied to a judgment rendered in a Montana federal district court against an Iowa corporation in favor of a Montana citizen who was injured in Montana.

judgment interest.

DATED this 15th day of January 2014.

Dana L. Christensen, Chief Judge
United States District Court